## SNYDER, Plaintiff-Appellee, v. INDUSTRIAL COMMISSION, Defendant-Appellant.

Ohio Appeals, Second District, Franklin County.

No. 3672.   Decided February 15, 1944.

Robert M. Draper, Columbus, David A. Peiros, Columbus, for Plaintiff-Appellee.

Thomas J. Herbert, Attorney General, Robert E. Hall, Asst. Atty. Gen'l., Columbus, Albertus B. Conn, Asst. Atty. Gen'l. Columbus, for defendant-appellant.

## OPINION.

By BARNES, P. J.

The above-entitled cause is now being determined as an error proceeding by reason of defendant's appeal on questions of law from the judgment of the Court of Common Pleas of Franklin County, Ohio. The proceeding originated before the Industrial Commission of Ohio.

Plaintiff's husband and decedent for a number of years prior to August, 1941, had been in the employ of the Exact Weight Scale Company, a corporation with its principal place of business in Franklin County, Ohio. The employer had complied with all requirements and thereby was amenable to the Workmen's Compensation Act. It was plaintiff's claim that on

or about Monday, August 4, 1941, her husband, Charles Snyder, stepped on a tack, which caused infection in his left foot, resulting in gangrene, making necessary the amputation of his left leg about six inches above the knee, and that the said Charles Snyder died on October 16, 1941, from the shock of the operation and amputation of the left leg. Plaintiff duly filed her claim for benefits for the death of her husband and thereafter proper procedural steps were taken to perfect her appeal to the Common Pleas Court, after its disallowance by the Industrial Commission on jurisdictional grounds.

The issues were joined by the answer of the defendant, which admitted the formal allegations of plaintiff's petition, including the employment of plaintiff's decedent, the amenability of the employer named, the fact of Charles Snyder's death on or about October 16, 1941, and the validity of the procedural steps taken to perfect an appeal to the Court of Common Pleas.

By general denied the defendant denied that plaintiff's decedent sustained an accidental injury in the course of and arising out of his employment and that his death was the proximate result of said alleged injury.

The cause came on for hearing before the Court, a jury having been duly waived by agreement of counsel. A finding was made by the Court in favor of plaintiff's right to participate in the state insurance fund for the death of her husband. Motion for new trial was duly filed, overruled and judgment rendered on the Court's finding. In due time defendant gave notice of appeal, thus lodging the cause in our Court.

Plaintiff's decedent's place of employment at the times heretofore or hereinafter mentioned being some five miles from his residence, his means of transportation to and from his work was by his self-owned automobile.

The first knowledge that anybody had that plaintiff's decedent had a tack in his shoe which had punctured the sole and gone into his sock and the flesh of the bottom of the foot, was on the evening of Monday, August 4th, immediately after returning home from his work. Mrs. Snyder was sick at the time and when Mr. Snyder came in he complained of his foot hurting him. At the suggestion of Mrs. Snyder he removed his shoe and then discovered a blood stain on his sock and a slight puncture in the sole of his foot. Mrs. Snyder removed the tack from the sole of the shoe and described it as a copper tack, not very large. There is no direct evidence as to when or where this tack was picked up by plaintiff's decedent on his shoe. It was sought to connect this up by calling other

employees at the plant of the Exact Weight Scale Company where plaintiff's decedent worked, to show, at various times, that Mr. Snyder might use tacks at his bench, and one witness on some occasion had seen tacks on the floor. The use of tacks was not a daily routine, but it did arise under certain conditions. The tacks were described as copper tacks, one witness saying copper nails or tacks. One witness said they were very soft, and all said small. Beyond this there was no description. Mrs. Snyder had not retained the tack which she said she took out of her husband's shoe. Over the objection of defendant she was permitted to testify that the description of the tacks used or seen at the plant by two of the co-workers corresponded to the tack she found in her husband's shoe. We think this was error for two reasons: the description given by the two employees was very general, as was plaintiff's previous description in her testimony. Her evidence as given was solely a conclusion. All witnesses should have been required to give in the minutest detail possible the description and then if pertinent it would be up to the Court to determine whether or not there was an identity in kind or kinds of tack. One witness called for the plaintiff, in answer to an inquiry as to whether or not it was possible for Mr. Snyder to pick up a tack in his shoe while walking around in his work in the plant, answered, "Yes, but no more so than would be possible on High Street." The form of this question was objectionable and the answer was also objectionable, but it was a statement of what is a matter of common knowledge that tacks and nails are found in many places and are frequently found on the alleys, highways, outbuildings, yards, inside places of work, surrounding grounds and in residences. There is no evidence whatever supporting the claim that this tack punctured decedent's shoe at the plant where he was working. In our lifetime we have all had tacks to puncture the sole of our shoe. As soon as the point of the tack reaches the flesh we know it and at once remove the shoe to find the exact source of trouble. There is no indication that plaintiff's decedent was aware of a tack being in his shoe until he stepped into his home following his five mile automobile trip from his place of employment. There was the opportunity of picking up the tack off of the premises of the plant, even on decedent's own premises. To say that decedent received an injury at the plant in the course of his employment and growing out of his employment would be a mere guess. We, therefore, are compelled to say that there is a failure of proof on this vital question.

A second question arises as to whether or not the evidence establishes a causal connection between the tack wound and decedent's death on October 16, 1941. According to the testimony of plaintiff Mr. Snyder went back to work on Tuesday and Wednesday. On Thursday he did not go to work and on that day Dr. Gettrost was called. On August 16th, Mr. Snyder was taken to Dr. Kaadt's diabetic hospital, S. Whitney, Indiana. On September 3, he was brought back to his home and thereafter was treated by Dr. R. T. Sharp. Neither Dr. Gettrost nor Dr. Kaadt were called as witnesses nor was their deposition taken. The only medical testimony was that of Dr. R. T. Sharp. Dr. Sharp said that he treated Mr. Snyder from September 3 to October 11, and that he died on October 16th. He further testified that the cause of death was a shock from operation and amputation of the leg. He was asked if he knew the cause for his leg being amputated and answered that, "Well he stepped on a nail and got gangrene of the foot, which progressed and became so bad that he had to have his leg amputated".

There was a motion of defendant to strike the answer. The referee before the testimony was taken sustained the motion but the trial court overruled it, stating at the time that, " 'He stepped on a nail' apparently not within the Doctor's personal knowledge, but obtained from history". We think this ruling of the trial court was erroneous for the reason, among others, that there was no evidence in the record disclosing where Doctor obtained his history, and for the further reason that where a factual question is in issue a doctor's testimony as to history may not be considered as supporting the disputed factual questions. Immediately thereafter the following question was asked.

"What was the cause of the gangrene of the leg, Doctor, if you know? A. Well, that was, first an infection resulting from the nail; second, from a complication of diabetes."

We are constrained to the view that there is a failure of testimony as to any accidental injury sustained by Mr. Snyder in the course of his employment and growing out of his employment; and second, there was no showing of causal connection by competent evidence between the injury to Mr. Snyder's foot and his subsequent death.

We regret we are compelled to reverse the finding and judgment of the Common Pleas Court.

Under the law there being no opportunity to introduce any further or additional testimony, and since a retrial would

be upon the same testimony presented in the present bill of exceptions, it becomes our duty to enter final judgment, dismissing plaintiff's petition and awarding costs.

Cause remanded for collection of costs and any further proceedings required by law.

HORNBECK and GEIGER, JJ., concur.